

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

LESIA WILLIAMS                                NO: 3:13-CV-03012

VERSUS                                        JUDGE DONALD E. WALTER

FIRST TOWER LOAN, LLC                         MAGISTRATE KAREN HAYES

**MEMORANDUM RULING**

Before the court is the motion for summary judgment filed on behalf of defendant First Tower Loan, LLC ("Tower Loan"). [Doc. #21]. Plaintiff Lesia Williams ("plaintiff") opposes the motion. [Docs. ##25, 28]. For the following reasons, Tower Loan's motion is **GRANTED** and plaintiff's suit is **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

The relevant facts of this case are not in dispute.[1] Tower Loan is a finance company operating numerous branch offices in five different states.[2] In May 2011, plaintiff began working as an after-hours janitor at two of Tower Loan's Louisiana branches located in Ouachita Parish.[3] Plaintiff had previously become a customer of Tower Loan when she co-signed an automobile loan for her son.[4]

On November 28, 2012, plaintiff filed for Chapter 13 Bankruptcy.[5] The outstanding amount

---

[1] Doc. #21-2; doc. # 25-7; doc. #25-8.

[2] Doc. #21-2, p. 1, ¶ 1; doc. #25-8.

[3] Doc. #21-2, pp. 1-2, ¶¶ 2-3, 5-6; doc. #25-8.

[4] Doc. #21-2, p. 1, ¶ 1; doc. #25-8.

[5] Doc. #21-2, p. 3, ¶ 18; doc. #25-8.

plaintiff owed on the automobile loan was one of the debts that plaintiff asked to be discharged.[6] Shortly after receiving notice of plaintiff's bankruptcy filing, a manager at Tower Loan's Monroe branch informed plaintiff that she was fired.[7] Plaintiff claims that she was explicitly told that she was being terminated because she had declared bankruptcy and named Tower Loan as a creditor.[8]

On November 16, 2013, plaintiff filed a complaint against Tower Loan alleging that her termination was a violation of 11 U.S.C. § 525(b). Tower Loan now moves for summary judgment, primarily arguing that § 525(b) is inapplicable because plaintiff was not an employee of Tower Loan but rather an independent contractor. Alternatively, Tower Loan argues that plaintiff should be estopped from asserting her claim because she failed to timely disclose the instant lawsuit in her bankruptcy proceeding.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion."

---

[6] Doc. #21-2, p. 3, ¶ 19; doc. #25-8.

[7] Doc. #21-2, p. 2, ¶ 6; doc. #25-8.

[8] Doc. #25-4, p. 39.

[9] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

*Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (citing *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir. 1975)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes

of the motion, unless controverted as required by this rule." LR 56.2.

### III. DISCUSSION

The court must determine: (A) whether § 525(b) applies to independent contractors; and (B) whether plaintiff was an independent contractor or an employee. For the following reasons, the court concludes that the statute does not apply to independent contractors and that plaintiff was an independent contractor and not an employee. Accordingly, summary judgment is appropriate in this case.[10]

### A. 11 U.S.C. § 525(b) Does Not Apply to Independent Contractors

Courts in the Fifth Circuit follow the plain meaning of a statute unless doing so would produce a result clearly contrary to Congressional intent. *Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997) (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991). Additionally, the United States Supreme Court has instructed courts to construe the provisions of the Bankruptcy Code according to the plain meaning of the particular statute at issue. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241–42 (1989). Accordingly, the court will first look to the plain language of the statute.

A plain reading suggests that § 525(b) does not afford protection to independent contractors. The statute provides, in pertinent part, that

> [n]o private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt . . . is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act[.]

---

[10] Because the court is granting summary judgment based on plaintiff's status as an independent contractor, the court need not reach Tower Loan's alternative estoppel argument.

11 U.S.C § 525(b) (emphasis added). The statute prohibits "private employers" from terminating the "employment" of a debtor or an individual associated with the debtor based on the debtor. However, the statute makes no mention of independent contractors or any other non-employees. Several courts faced with the issue of whether § 525(b) applies to non-employees have looked to the statute's plain language and determined that it does not. *See, e.g.*, *In re Hardy*, 209 B.R. 371, 374–79 (Bankr. E.D. Va. 1997); *In re Henry*, 129 B.R. 75, 78 (Bankr. E.D. Va. 1991); *In re Madison Madison Int'l of Ill., P.C.*, 77 B.R. 678, 680 (Bankr. E.D. Wis. 1987); *Kepple v. Miller*, 572 S.E.2d. 687, 688–89 (Ga. App. 2002). This court finds the reasoning of those cases persuasive and agrees with the decision reached therein—that the statute's language prohibiting "private employers" from terminating "employment" means that only existing employer-employee relationships are contemplated.

The court's conclusion is further supported by the Fifth Circuit's strict interpretation of § 525(b). In *In re Burnett*, 635 F.3d 169 (5th Cir. 2011), the Fifth Circuit addressed the issue of whether § 525(b) prohibits private employers from denying employment to prospective employees based on an applicant's bankruptcy status. In deciding that such conduct is not prohibited, the court relied heavily on the fact that the language of § 525(b) does not explicitly address the denial of prospective employment, unlike § 525(a), which applies to public employers. *Burnett*, 635 F.3d at 171–73. Based on the *Burnett* decision, it is likely that the Fifth Circuit would reach a similar conclusion in the instant case and refuse to extend protection under § 525(b) to independent contractors when the statute is silent as to such individuals.

Finally, a finding that § 525(b) does not apply to independent contractors is consistent with the application of other federal employment discrimination laws. Specifically, independent

contractors are not protected under Title VII;[11] the Age Discrimination in Employment Act;[12] the Americans with Disabilities Act;[13] the Family Medical Leave Act;[14] or the Fair Labor Standards Act.[15] This court sees no reason to treat the bankruptcy anti-discrimination statute any differently. Accordingly, the court concludes that § 525(b) does not apply to independent contractors.

## B. Plaintiff was an Independent Contractor of Tower Loan

In order to determine plaintiff's status, this court will apply the Fifth Circuit's hybrid economic realities/common law control test.[16] The right to control an employee's conduct is the most important factor of this test. *Deal v. State Farm Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993) (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990)). The control component examines whether the alleged employer "has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Deal*, 5 F.3d at 119 (citations omitted). The economic realities component examines "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (citation omitted). Other factors to consider under the economic realities component include:

---

[11] *See, e.g., Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985).

[12] *See, e.g., Hickey v. Arkla Indus., Inc.*, 699 F.2d 748 (5th Cir. 1983).

[13] *See, e.g., E.E.O.C. v. Valero Refining-Texas, L.P.*, 2013 WL 1168620 at *2 (S.D. Tex. 2013).

[14] *See, e.g., Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 763–64 (8th Cir. 2014).

[15] *See, e.g., Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 845–46 (5th Cir. 2010).

[16] The hybrid economic realities/common law control test is used in Title VII and ADEA cases. *Deal v. State Farm Cty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir. 1993). The same test is also used in ADA cases. *See, e.g., Juino v. Parish Fire Dist. No. 5*, 717 F.3d 431, 434 (5th Cir. 2013). Although this court is not aware of a Fifth Circuit case applying the test in the context of 11 U.S.C. § 525, the court finds that application of the test in this case will be consistent with the Fifth Circuit's analysis of similar employment discrimination laws.

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Fields.* 906 F.2d at 1020 n. 4 (citing *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir.1979)).

Applying the test to the undisputed facts of this case, plaintiff must be considered an independent contractor. Most importantly, Tower Loan did not "control" the manner or timing of plaintiff's work. Plaintiff cleaned the Tower Loan branches twice a week, but she set her own schedule and did not work mandatory shifts.[17] Plaintiff worked after-hours, often with no employees present.[18] Although plaintiff was allowed to use the cleaning supplies located at the Tower Loan branches, no one at Tower Loan told plaintiff how to perform her tasks and plaintiff was free to use whatever cleaning methods or materials she saw fit.[19] These facts suggest that Tower Loan did not exercise any significant degree of control over plaintiff's work.

Furthermore, the "economic realities" also establish that plaintiff was an independent contractor. Plaintiff's primary source of income was her job at a local packaging plant; her work at Tower Loan was a secondary income source.[20] Tower Loan paid plaintiff a flat rate of $180.00 per

---

[17] Doc. #21-2, pp. 1–2, ¶¶ 2, 3, 10; doc. #25-8.

[18] Doc. #21-2, pp, 1, ¶ 2; doc. #25-8. *See also* doc. #25-4, p. 34, ll. 14–19.

[19] Doc. #21-2, p. 2, ¶ 11; doc. #25-8. *See also* doc. #25-4, pp. 30–31.

[20] Doc. #25-4, pp. 19–21.

branch, per month, and her pay was not contingent on how many hours she worked.[21] Plaintiff never filled out a job application or any other employment paperwork for Tower Loan, nor did she attend an orientation or any other form of training, suggesting that neither plaintiff nor Tower Loan considered her to be an employee.[22]

The manner in which the parties handled plaintiff's tax consequences is also instructive under the economic-realities component. Tower Loan did not withhold any taxes from plaintiff's pay and provided no benefits to her.[23] Rather, Tower Loan issued plaintiff an IRS Form 1099-Misc. for "Miscellaneous Income."[24] Notably, on her 2011 and 2012 tax returns, plaintiff entered her pay from Tower Loan as "business income" and not "wages, salaries, or tips," and she paid self-employment taxes on this income both years.[25]

Even when viewed in the light most favorable to plaintiff, the facts of this case overwhelmingly suggest that plaintiff was an independent contractor and not an employee of Tower Loan. Accordingly, considering the court's conclusion that § 525(b) does not cover independent contractors, plaintiff's claim fails.

---

[21] Doc. #21-2, p. 1, ¶ 4. Plaintiff's objection to this statement of undisputed fact centers around her endorsing one of the paychecks back to Tower Loan after the check was issued. Plaintiff does not dispute the nature or rate of her pay. Doc. # 25-8.

[22] Doc. #21-2, p. 2, ¶¶ 7–8; doc. #25-8.

[23] Doc. #21-2, p. 2, ¶¶5, 12; doc. #25-8.

[24] Doc. #21-2, p. 2, ¶13 ; doc. #25-8.

[25] Doc. #21-2, p. 3, ¶¶ 15–17 ; doc. #25-8.

## IV. CONCLUSION

For the foregoing reasons, defendants motion for summary judgment, [doc. #21], is hereby **GRANTED.**

THUS DONE AND SIGNED in Shreveport, Louisiana, this 29 day of January, 2015.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE